### The NATIONAL NUTRITIONAL FOODS ASSOCIATION and Solgar Co., Inc., Plaintiffs,

### v.

### Frank E. YOUNG, M.D., Commissioner of Food and Drugs, and Food and Drug Administration, Defendants.

### No. 84 Civ. 5108 (MP).

United States District Court,
S.D. New York.

Dec. 14, 1984.

Bass & Ullman by Jacob Laufer, New York City, for plaintiffs.

Rudolph W. Giuliani, U.S. Atty., S.D.N.Y. by Amy Rothstein, Asst. U.S. Atty., New York City, for defendants.

MILTON POLLACK, Senior District Judge.

This is a suit for an injunction and declaratory judgment which seeks to invalidate regulations of the Food and Drug Administration ("FDA") promulgated on April 6, 1984 and applicable to high-concentrate food products deriving more than 50% of their caloric value from protein. Plaintiffs challenge the warning labels required on such food products as arbitrary and capricious, and as unsupported by the administrative record of the Agency.

Jurisdiction of the Court over this suit resides in 28 U.S.C. §§ 1332 and 1391(a). In July, 1984, this Court denied plaintiff's application for a preliminary injunction which sought to hold up the effective date, August 6, 1984, of the regulations. The

Court found, at that time, that defendant had demonstrated a "reasonable basis for addressing the hazards posed by the use of low caloried protein diets." *National Nutritional Foods Ass'n. v. Novitch*, 589 F.Supp. 798, 799, at 801 (S.D.N.Y.1984) (Pollack, J.). The issues were then presented at a Bench Trial concluded on December 10, 1984.

The plaintiffs' contentions turn basically on the answer to the question whether the requirements of the regulations at issue are adequately supported by rational judgments as to relevant material to be found in the Agency's administrative record, which is comprised of 12,412 pages of material. 5 U.S.C. § 706(2)(A); *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420, 91 S.Ct. 814, 825, 28 L.Ed.2d 136 (1971).

Upon due deliberation, the Court finds and decides that the regulations of the Agency questioned herein establish rational thresholds as well as reasonable and proper warnings and notices to be affixed to the protein products and that these are supported by substantial evidence in the administrative record and are reasonably and necessarily required in the protection of the public interest.

In detail, the findings of fact and conclusions of the Court follow.

*Background*

Some seven years ago, an alarming incidence of illness and deaths was reported that was associated with persons who were on certain liquid protein diets which were being widely promoted and recommended at the time. Those reports prompted the FDA to conduct an investigation and ultimately to propose the predecessors of the current regulations. 42 Fed.Reg. 61285–61287, (December 2, 1977). The regulation at issue in this action, as modified, was promulgated by the FDA on April 6, 1984 (21 C.F.R. § 101.17(d)). It establishes three types of required label and labeling statements for:

> "any food product in liquid, powdered, tablet, capsule or similar forms that derives more than 50 percent of its total caloric value from either whole protein, protein hydrolysates, amino acid mixtures or a combination of these, and that is represented for use in reducing weight" ... (regulated protein products)

(49 Fed.Reg. 13679–13689, April 6, 1984).

The background which precipitated the original form of the regulations and of the modifications thereof over a period of seven years leading up to the 1984 version, is instructive. The findings and conclusions of the FDA giving the reasons and explanation for the promulgation of the regulations are set forth in the preambles to the various Federal Register announcements issued during the course of the administrative proceedings.

In 1976 and 1977, a book entitled "The Last Chance Diet" was written by a Dr. Robert Linn popularizing the use of "predigested liquid protein supplements," and proclaiming them as essentially the only source of nourishment in a weight reduction program. This diet reached widespread fad proportions and involved the ingestion of less than 400 calories per day. As a result of this book and other promotional materials, some of the regulated protein products which were either specifically labeled for use in diets providing more than 400 calories per day, or as food supplements, were used in diets of less than 400 calories per day.

The National Center for Disease Control ("CDC") conducted a portion of the investigation of the casualties reported following the protein dieting described and found *inter alia* that the death rate among people adhering to very low calorie diets in conjunction with regulated protein products was, while the diet was popular, 37 times greater than the death rate in the general population. The CDC further concluded that the clinical electrocardiographic pattern of the deaths reported was highly suggestive of death by starvation.

As a result of such investigation, FDA had determined that use of the regulated protein products in diets of less than 400 calories per day ("very low calorie diets")

may cause serious illness or sudden and unexpected death from cardiac arrest and that such diets should not be undertaken without medical supervision or by infants, children, pregnant or nursing women.

The 1984 regulation now sets forth three types of required label statements for the regulated protein products. The use for which a particular product is represented on its label and labeling determines which of the three label statements must appear on the product's label. Regulated protein products which are represented on their label or labeling for use in weight reduction must bear a label with the word "warning" which advises that very low calorie diets of less than 400 calories per day may cause serious illness or death and that such diets should not be undertaken without medical supervision. (C.F.R. § 101.-17(d)(1)) (the first label statement).

If a regulated protein product is represented on its label or labeling for weight reduction in diets of more than 400 calories per day, and provides a specific diet plan (or information as to where one can be obtained) it is exempt from the first label statement and is required instead to bear a label which includes the following two sentences:

> "*Notice:* For weight reduction use only as directed in the accompanying diet plan (the name and specific location in labeling of the diet plan may be included in this statement in place of "accompanying diet plan"). Do not use in diets supplying less than 400 calories per day without medical supervision."

21 C.F.R. § 101.17(d)(2) (the second label statement).

If a regulated protein product is represented in its label or labeling for purposes other than weight reduction, the regulation prescribes the following label requirement:

> "*Notice:* Use this product as a food supplement only. Do not use for weight reduction."

21 C.F.R. § 101.17(d)(3) (the third label statement).

Since regulations of this kind were first proposed, changes have taken place in the market place with respect to protein supplement products. Popularity of the fad diet which advocated the use of protein as the sole source of nourishment in conjunction with very low calorie diets (both supervised and unsupervised) has long since ended. One regulated product, deriving 56% of its calories from protein was represented for supervised use in a very low calorie diet during the notice and comment proceedings.

Other reducing diets, with varying combinations of calories and types of nutrients remain popular. One such diet involves the use of products deriving less than 50% of its calories from protein, and provides less than 400 calories per day. The products affiliated with such diet are not subject to the regulation.

Except for a few instances, there is no evidence of continued widespread use of very low calorie protein diets or adverse effects therefrom. FDA has not received reports of serious injury or death with respect to the use of the regulated protein products since at least 1980.

In explaining the continuing need for this regulation at the present time, the FDA stated *inter alia:*

> "The record contains considerable evidence concerning the risks associated with very low calorie protein diets. FDA has clear authority to require label warnings to avert the recurrence of the type of use and misuse of protein products which resulted in the serious health problem that occurred in 1977 ... the Agency is concerned that if it abandons its label warning proposal very low calorie protein diets will again gain similar popularity without adequate warnings of the risks."

49 Fed.Reg. 13685 Column 1.

There is no evidence that plaintiffs have suffered any economic loss as a result of the implementation of the regulation during the time period from August 6, 1984 to the present.

*Plaintiffs' Challenge to the 1984 Regulation*

As a result of the trial testimony of Dr. Victor Frattali, FDA's Deputy Director of Nutrition, who was actively involved in the development of the regulation throughout the entire course of the administrative proceedings, the plaintiffs have reduced their broadside challenge to the regulation and now challenge only the following:

With respect to (a), the second label statement—first sentence;

(b) the third label statement—first sentence; and

(c) the third label statement as it applies to products sold for use in gaining weight and not for weight reduction.

### A. The Second Label Statement—First Sentence

■ The regulation in the second label statement requires that a regulated protein product be accompanied by a nutritionally balanced diet plan providing more than 400 calories per day (or provide information describing where such plan can be obtained) and that the label of the product bear the second label statement.

Plaintiffs object to the requirement of this statement on the label as overbroad. They argue that under the regulation manufacturers are not precluded from providing as many accompanying diet plans as they desire. They say it is not feasible for a manufacturer to supply either with a product, or by mail, all diet plans providing more than 400 calories per day. They say that the regulation prohibits a manufacturer who desires to provide one accompanying diet plan, from making a statement on the label, such as "For weight reduction, use only with a nutritionally balanced diet of more than 1,000 calories per day such as the accompanying diet plan," in place of the first sentence of the second label which reads "For weight reduction, use only as directed in the accompanying diet plan."

The plaintiffs contended that the sole concern of FDA is that the plan does not go below 400 calories in weight reduction diets and consequently the use of the word "only" is improper surplusage since the last sentence reads, "Do not use in diets supplying less than 400 calories per day without medical supervision." It is the use of the word "only" to which the plaintiffs finally reduced their criticism of the second sentence on the last day of the hearings.

This criticism of the regulation as overbroad lacks merit. The word "only" is used to refer to qualifying plans and, contrary to plaintiffs' argument, does not constrict the manufacturer in its selection of a qualifying plan; it merely requires the accompanying copy of the diet plan selected by the manufacturer, or the name of, and specific location of, its availability. A manufacturer is not precluded from providing as many qualifying diet plans as he desires.

### B. The Third Label Statement—First Sentence

■ The first sentence of the required notice in the third statement to which the plaintiffs object reads:

"Use this product as a food supplement only."

In a second sentence in the third statement, the notice must say:

"Do not use for weight reduction."

Plaintiffs do not object to the subsequent sentence quoted above. They object to the seeming redundancy of the first and second sentences, arguing that there is no evidence that consumers regard the uses for such a product as food supplement uses.

It is perfectly apparent that anything compounded of ingredients is in a form in which each ingredient supplements another.

It is also entirely rational for FDA to anticipate consumer confusion and to require a notice expressly cautioning against use of the protein product by itself, both by a statement that the product should be used only as an additive and not used separately for weight reduction.

Certainly, the plaintiffs have not shown any damage to their sales from this innocuous requirement and the notice form is

entirely rational under all the circumstances.

### C. The Third Label Statement—Products Sold For Use in Gaining Weight and not for Weight Reduction

The third label statement applies to products which are expressly labeled for use in gaining weight and which are not labeled for weight reduction. Plaintiffs contend that it is arbitrary and capricious to require products promoted for weight gain to be subject to a regulation designed to curb abuses in weight reduction.

It is undisputed that the composition of protein products promoted for use in gaining weight may be identical to that of products promoted for weight reduction. Thus, the FDA believes that the third label statement is necessary to guard against the possibility that regulated products will be used in very low calorie diets. Since the products are promoted as aids for gaining weight, sales are unlikely to be affected by a label cautioning against their use for weight loss; indeed, plaintiffs have presented no evidence of detrimental effects on sales.

### Conclusion

Based on a "searching and careful" review, the Court finds that each of the requirements of the regulation at issue is adequately supported by rational judgments of the FDA based on relevant material. Plaintiffs have not established as meritorious their criticisms of the substance, form, or propriety of the regulation, or of the judgment of the FDA.

The complaint is dismissed in its entirety, and judgment shall be entered herein in favor of the defendants, with costs.

So Ordered.